IN THE UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

BEAUFORT DIVISION

| | | |
|---|---|---|
| Brenda L. Mutcherson, | ) | Civil Action No. 9:12-0833-RMG-BM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Care Core National, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This case was originally filed by the Plaintiff, pro se, in the United States District Court for the Southern District of Georgia. By Order filed March 22, 2012, this case was transferred to the District of South Carolina. See Court Docket No. 5.

Plaintiff is a former employee of the Defendant Care Core National, and alleges in her pro se Complaint that she was discriminated against by the Defendant in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), et. seq., and the Americans with Disabilities Act (ADA), 42 U.S.C. § 12117, et seq. Pursuant to a motion for more definite statement filed by the Defendant and a response from the Plaintiff, it was ordered that the case would proceed with Plaintiff presenting two cognizable claims: a Title VII hostile work environment claim, and an interference claim under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601, et. seq. See Court Docket No. 34. The Defendant thereafter filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on December 6, 2013.



1

As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on December 10, 2013, advising Plaintiff of the importance of a motion for summary judgment and of the need for her to file an adequate response. Plaintiff was specifically advised that if she failed to respond adequately, the Defendant's motion may be granted, thereby ending her case. Plaintiff thereafter filed a response in opposition to the Defendant's motion for summary judgment on December 17, 2013, following which the Defendant filed a reply memorandum on December 27, 2013. Plaintiff submitted an additional filing on January 13, 2014. Defendant's motion is now before the Court for disposition.[1]

## Background and Evidence

Plaintiff alleges in her verified complaint,[2] as clarified and set forth in the Court's Order of October 3, 2012, as follows:

> Plaintiff alleges that she was hired by the Defendant in October 2006 as a Customer Service Representative (CSR). Plaintiff, an African American, alleges that she was harassed and called names by a supervisor, Dole Smith (Caucasian), from March 2008 through April 2011. Plaintiff alleges that this harassment was because of her race, that she reported Smith's conduct to her immediate supervisor, Shawna Adams, as well as to Jane Galloway, Vice President of Human Resources, but that nothing was done and the harassment continued. See Complaint (Court Docket No. 1, p. 6).

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(e)(g), D.S.C. The Defendant has filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[2]Plaintiff's claims are set forth in a combination of her original Complaint, which is verified, and her filing of July 13, 2012 further clarifying her claims, which although not verified the Court has considered as being part of her original verified Complaint. In this Circuit, verified complaints by pro se litigants are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).



        \* \* \* \* \* \* \* \*

> Plaintiff also alleges that her daughter was in a terrible car accident in 2010, but that when she asked Human Resources employee Deana Capps if she could take FMLA leave for a couple of days while her daughter had her surgery, she was not allowed to take any time off. <u>See</u> Court Document No. 30, pp. 2-3. The FMLA allows an employee to take leave time to care for a family member; <u>see</u> 29 U.S.C. § 2912(a)(1)(c); and Plaintiff clearly alleges that she requested leave for this purpose.

<u>See</u> Court Docket No. 34, pp. 2-4.

Plaintiff seeks monetary damages, as well as injunctive relief to include ordering that "detectives" stop telling lies to her neighbors, business establishments, and family members, and stop "bugging" her phone. <u>See</u> generally, <u>Plaintiff's Verified Complaint</u>, as amended.

   As attachments to her Complaint, Plaintiff has submitted a copy of an Administrative Charge of Discrimination she filed with the Equal Employment Opportunity Commission (EEOC) on August 9, 2011, in which she alleges race and disability discrimination. <u>See</u> Court Docket No. 1, pp. 6-7. Plaintiff has also attached a copy of a Right to Sue letter issued by the EEOC on November 30, 2011. <u>Id.</u>, at p. 9. Some additional EEOC documentation is included with these materials.

   Plaintiff has also submitted copies of what purport to be a note to her from someone named "Pernice" indicating that she [Pernice] had been able to secure a meeting with Human Resources regarding an "incident" with a "Ms. Campbell"; a copy of what appears to be a medical summary from an examination of the Plaintiff on or around October 13, 2009; an undated document titled "Cardiology Note"; an FMLA leave form with some out of sequence attachments which apparently relate to Plaintiff's medical condition; a copy of a letter dated September 1, 2010 to Plaintiff's physician from Deana Capps, Human Resources Generalist, advising Plaintiff's physician (Dr. Randy Bottner) that Capps was not at that time able to fully certify Plaintiff's FMLA requests



because the certification form was incomplete, and asking Dr. Bottner to forward a completed form; and a copy of a "Performance Rating" form dated January 12, 2011. See Court Docket No. 30-1.

In support of summary judgment in the case, the Defendant has submitted a copy of selected pages from Plaintiff's Deposition; a state law pleading relating to an accident involving Plaintiff's daughter; a copy of a Personnel Action form dated October 13, 2006; a copy of a job description form dated October 23, 2006; a copy of a Policy and Procedure Acknowledgment of Receipt form signed by the Plaintiff on October 23, 2006; a copy of a Human Resources Policy form relating to harassment; a copy of a Policy and Procedure form relating to Family and Medical Leave; a copy of a Job Description form dated August 8, 2007; a copy of a letter to the Plaintiff from Patricia Johnston, Assistant Director of Human Resources for the Defendant, dated April 25, 2011 and notifying Plaintiff that she was being terminated effective that day; a copy of a Policy and Procedure form relating to work place violence; a copy of a letter from the Plaintiff to defense counsel dated September 3, 2013; and two affidavits.

In an affidavit dated December 3, 2013, Deana Capps attests that she was employed by the Defendant from February 5, 2007 to June 17, 2011 as a Human Resources Generalist, and that one of her job responsibilities was administering leave under the FMLA. Capps attests that she does not recall the Plaintiff requesting, either verbally or in writing, to take FMLA leave relating to her daughter's car accident in October 2009, or her daughter's surgeries in October 2009 or April 2010. Capps attests that if Plaintiff had approached her regarding taking FMLA leave to care for her daughter, she would have provided Plaintiff with the appropriate FMLA paperwork, as was her practice with all Care Core employees. See generally, Capps Affidavit.

In an affidavit dated December 5, 2013, Christi Garcia attests that she has been



employed by the Defendant as a paralegal since February 27, 2012, and that she conducted a coordinated search for emails sent by the Plaintiff during her period of employment with the Defendant. Garcia attests that she searched for all email messages (sent, received, draft, and deleted) associated with Plaintiff's account as well as the account of former Care Core HR Generalist Deana Capps for the following key terms: "FMLA", "leave", "daughter", "car", "wreck", "accident", and "surgery", and that no emails regarding FMLA leave for Plaintiff's daughter's car accident or subsequent surgeries were found. See generally, Garcia Affidavit.

As an attachment to her response in opposition to the Defendant's motion for summary judgment, Plaintiff has attached as an exhibit a letter (unverified) from her son (Brendan Andrews) in which Andrews states that for the past three years, while his mother has been in a civil case, "people have been coming in and out of our house" and "stealing things". Andrews states that they can "hear them come in" and that his mother has "seen them with her own eyes". Andrews goes on to state in this letter that one night he heard someone walking upstairs and "mess[ing] with the washing machine", and that when he went to look he saw a "slim looking white guy". Andrews states that "they" come in often, and cut up his mother's carpet. Andrews states that he and his mother both think they are coming from the attic. See Court Docket No. 104-1.

As attachments to its reply memorandum, the Defendant has submitted a copy of Plaintiff's EEOC charge of discrimination; a copy of some supplemental discovery responses received by the Defendant from the Plaintiff; copies of some additional selected pages from Plaintiff's deposition; and copies of some company emails relating to the Plaintiff. The Defendant has also attached an affidavit from Kimberly Guinta, who attests that she has been employed by the Defendant since January 6, 2011, originally as a Senior Human Resources Generalist, and since August 18, 2012



as Human Resources Manager. Guinta attests that at all times relevant to Plaintiff's lawsuit, her direct and immediate supervisor was Customer Service Supervisor Marketta Bolden. Guinta attests that while Bolden had the authority to discipline the Plaintiff, she did not have the power to hire, fire, promote, or demote the Plaintiff. Guinta further attests that Sherry Campbell was never Plaintiff's supervisor; rather, Campbell was Supervisor Non-Clinical, and did not have the power to hire, fire, demote, promote, or disciple the Plaintiff. See generally, Guinta Affidavit.

Finally, as attachments to her filing of January 13, 2014, Plaintiff submitted copies of what appear to be medical examination results relating to her vision from 2009 to 2010, as well as another statement from Brendan Andrews (unverified) dated December 7, 2013, which reads in its entirety:

> For the past three years people have been coming in and out of my house. Because [Plaintiff] is in a civil suit. When these people leave and come in it gets colder. They come in through the neighbor's house. They sometimes steal things from us.

### Discussion

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991). Once the moving party makes this showing, however, to avoid summary judgment the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). Further, while the Federal Court is charged with liberally construing a



complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990). Here, after careful review and consideration of the arguments and evidence submitted to this Court, the undersigned finds and concludes for the reasons set forth hereinbelow that the Defendant is entitled to summary judgment in this case.

**Hostile work environment claim**. To avoid summary judgment on her hostile work environment claim, Plaintiff must have evidence sufficient to create a genuine issue of fact that 1) she was subjected to unwelcome conduct in a work related setting; 2) the conduct complained of was based on her race; 3) the conduct was sufficiently severe or pervasive to alter her condition of employment and to create an abusive work environment; and 4) the conduct was imputable on some factual basis to her employer. EEOC v. Cent. Wholesalers, Inc., 573 F.3d 167, 175 (4th Cir. 2009); Ocheltree v. Scollon Productions, Inc., 308 F.3d 351, 356 (4th Cir. 2002), rehearing en banc, 335 F.3d 325 (4th Cir. 2003), cert. denied, 124 S.Ct. 1406 (2004); Spicer v. Com.of Va. Dep't of Corrections, 66 F.3d 705, 710 (4th Cir. 1995); Brown v. Perry, 184 F.3d 388, 393 (4th Cir. 1999); Scott v. Health Net Federal Services, LLC, No. 11-1947, 2012 WL 340216 at * 2 (4th Cir. Feb. 3, 2012). Plaintiff argues in her Complaint, as amended, that she was harassed and called names by her supervisor, Dole Smith, from March 2008 through April 2011; that this harassment was because of her race; and that she reported Smith's conduct to her immediate supervisor, Shawna Adams, as well to Jane Galloway, Vice President of Human Resources, but that nothing was done and the harassment



continued. See Complaint (Court Docket No. 1, p. 6). Although not alleged in her Complaint, in her response to the Defendant's motion for summary judgment, Plaintiff further alleges that she was "almost attacked by a co-worker", was verbally attacked while talking on the phone by a representative from the Defendant's Human Resources Department, and that an [unnamed] supervisor would use the "N" word in training class and in the break room. See Plaintiff's Response, p. 2.

With respect to the claim Plaintiff makes in her response brief about a supervisor using the "N" word, Defendant initially argues that Plaintiff is barred from bringing this claim because it was not set forth in her administrative charge, nor is it a claim Plaintiff made in her Complaint. Rather, Plaintiff only raises this issue for the first time in her response brief to the Defendant's motion for summary judgment. However, the supervisor at issue has been identified as Sherry Campbell; see Defendant's Exhibit (Court Docket No. 105-2); and while this particular allegation is not set forth with any specificity in Plaintiff's administrative charge, she does allege as part of the narrative of her charge that an "incident" had occurred involving Sherry Campbell in early 2011. See Court Docket No. 105-1, p. 2. Without any further evidence on this point, the undersigned cannot find as a matter of law that this claim was not part of the administrative investigation of Plaintiff's charge of discrimination. Cf. Chacko v. Patuxent Institution, 429 F.3d 505, 509 (4th Cir. 2005)[Claims which, although exceeding the scope of the EEOC charge, would naturally have arisen from the investigation thereof, are not procedurally barred]. Further, although the Defendant is certainly correct that Plaintiff did not make this claim in her Complaint, it is a claim that Plaintiff raised during the discovery process of this case; see, Defendant's Exhibit (Court Docket No. 105-2); and in light of the liberal treatment provided to pro se litigants in order to allow such a litigant to potentially develop a viable claim, and as the Defendant has had notice of this claim and was therefore able to develop

8



the evidence relating to this claim, the undersigned would not recommend dismissing Plaintiff's hostile work environment claim based on this alleged conduct on the grounds that it was not contained in the Complaint. Chacko, 429 F.3d at 509; Haines, 404 U.S. at 520-521 [Allegations of a pro se complaint subject to less stringent standards than formal pleadings drafted by lawyers].

Nonetheless, any hostile work environment claim relating to this alleged conduct is without merit. First, Sherry Campbell is herself an African-American; see Defendant's Exhibit (Court Document 105-3, p. 4); and when asked during her deposition what was the context in which Campbell had used the "N" word, Plaintiff responded that she would use it when telling a story or in conversation when they were in a group and just talking. See Defendant's Exhibit (Court Document 105-3, pp. 4-5). Plaintiff further testified that this only happened on one occasion, that she could not remember ever reporting it, nor could she remember the names of anyone else who was present. Id., pp. 5-7. With respect specifically to the other alleged incident that occurred between Plaintiff and Campbell in February 2011, where Plaintiff was apparently offended by a comment Campbell had made to another individual but which Plaintiff thought was directed to her, Plaintiff acknowledged that she did not think this incident had anything to do with race. Id., pp. 8-9; see also, Defendant's Exhibit (Court Docket No. 105-4).

There is no indication or inference contained in this evidence that Plaintiff was ever subjected to unwelcome conduct by Campbell in a work related setting based on her race, or that any such conduct was sufficiently severe or pervasive to alter her condition of employment and create an abusive work environment. See generally, Sullivan v. River Valley School District, 197 F.3d 804, 815 (6th Cir. 1999), cert. denied, 530 U.S. 1262 (2000) [Without a showing that the reasons for her alleged mistreatment were discriminatory, Plaintiff cannot establish a prima facie case for relief];

9


Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 768 (1998) (quoting Snell v. Suffolk City, 782 F.2d 1094, 1103 (2d Cir. 1986) ["To establish a hostile atmosphere, . . . . Plaintiffs must prove more than a few isolated incidents of [inappropriate conduct."]] (Thomas, dissenting); Hall v. Interstate Brands Corp., 395 Fed.Appx. 519, 523 (10th Cir. 2010)[Court dismissed claim of hostile work environment where Plaintiff only alleged limited, isolated incidents of inappropriate conduct]; Hampton v. J. W. Squire, Co., No. 10-13, 2010 WL 3927740, at * 4 (W.D.Va. Oct. 5, 2010) [Finding no hostile work environment where supervisor referred to the Plaintiff using the "N" word three times in the course of a conversation"], aff'd., No. 10-2203, 2011 WL 143661 (4th Cir. Jan. 18, 2011) (per curium).  Therefore, Plaintiff's hostile work environment claim cannot survive summary judgment based on this allegation.

With respect to Plaintiff's claim that she was harassed and called names by Supervisor Dole Smith (Caucasian) from March 2008 through April 2011, the evidence before the Court reflects Plaintiff testified that on one occasion Smith remarked that someone (an African-American female who Plaintiff testified was overweight) smelled, and that Plaintiff believed if that was true that Smith should have had a female manager take that employee into the bathroom and tell her that.  However, Plaintiff acknowledged that she did not know if Smith's comment had anything to do with the individual's race, whether the individual smelled, or if Smith was "just being mean".  See Defendant's Exhibit (Court Docket No. 98-2, pp. 4-5).  Plaintiff testified that Smith would also talk about "the old manager", about how the old manager did not like him and tried to get him fired and "all kinds of ridiculous stuff and he would talk about the old manager bad", and that "when people stand up and say bad things about people I got [sic] offended."  However, Plaintiff further testified that this former manager was white. Id., pp. 5-6.  Plaintiff also testified that on one occasion she was



sitting at her desk and heard Smith say "she is not a thief", talking about her. Plaintiff testified that she knew Smith was talking about her because he was "looking directly at me . . . .", and that she subsequently "discussed it with HR". However, when asked if she had any reason to believe this comment was based on her race, Plaintiff testified "You know, it may not be. But, you know, I am not sure". Id., pp. 9-10.

Plaintiff also testified to some other allegedly hostile behavior not involving Smith. Plaintiff complained about a coworker she used to sit next to who would "just cuss out people on the phone", which showed "the type of environment that it was". However, that coworker was an African-American, and Plaintiff acknowledged that race had nothing to do with this conduct. Id., pp. 8-9. Plaintiff also testified about an incident which "turned out to be a really hostile environment" when a coworker was standing over her, which made her uncomfortable. Plaintiff testified she complained to "Ms. Galloway", who told Plaintiff to tell the co-worker to "stop it", but that when she told the coworker to stop and sit down, the coworker wanted to fight and started yelling and screaming. However, as with the other co-worker, this coworker was also an African-American, and Plaintiff acknowledged that her conduct had nothing to do with race. Id., pp. 14-16.

Plaintiff also testified that she believed her supervisor was fired for sending her on an extended lunch break, although she conceded this was "just [her] opinion", and that after that incident "the [Defendant] engaged other employees to harass me". Plaintiff did not describe this alleged harassment in any detail, but when asked whether she believed any of it was related to her race, she answered "I don't know. But you know, maybe it was". Id., pp. 28-29. Plaintiff also testified that on one occasion a "dark-skinned black girl" tried to push her down the stairs, apparently because she did not like Plaintiff's pants. Id., p. 30. Plaintiff again conceded, however, that this incident had

11



nothing to do with race. Id., p. 31. Finally, Plaintiff complained that a manager named Eric Turner (a fellow African-American) said that Plaintiff was "no good". Again, however, Plaintiff does not contend that this comment had anything to do with race. Id., p. 32.

Defendant argues, and the undersigned agrees, that there is nothing in Plaintiff's testimony, either with respect to Smith's conduct or with respect to the other incidents Plaintiff identifies, sufficient to create a genuine issue of fact that Plaintiff was subjected to a racially hostile work environment. See Bolden v. PRC, Inc., 43 F.3d 545, 552 (10th Cir. 1994), cert. denied, 516 U.S. 826 (1995)["general harassment if not [based on a protected criteria] is not actionable"]; see also Causey v. Balog, 162 F.3d 795, 801-802 (4th Cir. 1998)[Affirming summary judgment wherein employee failed to show that his employer's alleged mistreatment was based on his race]. Specifically, by her own testimony, there is no evidence that Plaintiff faced any harassment because of her race, or that any harassment she was subjected to was sufficiently severe or pervasive to create an abusive work environment. See Hopkins v. Baltimore Gas & Electric Co., 77 F.3d 745, 754 (4th Cir. 1996) ["Title VII was not designed to create a federal remedy for all offensive language and conduct in the work place."]; Ellerth, 524 U.S. at 768 ["To establish a hostile atmosphere, . . . . Plaintiffs must prove more than a few isolated incidents of [inappropriate conduct."]] (Thomas, dissenting); Norris v. City of Anderson, 125 F.Supp.2d 759, 769 (D.S.C. 2000) ["Since Plaintiff's allegation contains no [conduct prohibited by Title VII], it cannot be used to support his hostile work environment claim"].

Therefore, Plaintiff's hostile work environment claim should be dismissed. House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim]; Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) [A party opposing

12



summary judgment "cannot create a general issue of fact through mere speculation or by the building of one inference upon another."]; Yarnevic v. Brink's Inc., 102 F.3d 753, 757-758 (4th Cir. 1996) [holding that remote inferences and conclusory allegations cannot defeat summary judgment].

**FMLA Interference Claim**. Plaintiff alleges in the amendment to her Complaint that her daughter was in a car accident in 2010, but that when she asked human resources employee Deana Capps if she could take FMLA leave while her daughter had surgery, she was not allowed to take any time off. See Court Docket No. 30, pp. 2-3.[3] The FMLA provides for twelve (12) weeks of unpaid leave per year for eligible employees, defined as employees who have been employed for at least twelve (12) months by the employer with respect to whom leave is requested, and for at least one thousand two hundred and fifty (1,250) hours of service with such employer during the previous twelve (12) month period. 29 U.S.C. § 2611(2)(A). Defendant has not disputed that Plaintiff meets this standard, and with respect to a request for leave, the FMLA allows an employee to take leave time to care for a family member. See 29 U.S.C. § 2612(a)(1)(c).

However, Defendant argues that Plaintiff's FMLA interference claim is time barred, because she did not assert it until the filing of the amendment to her Complaint on July 13, 2012, which was after the two year statute of limitations for FMLA interference claims had expired. See 29 U.S.C. § 2617(c)(1). As stated in the amendment to her Complaint, Plaintiff's allegations relating to her request for FMLA leave date from her daughter's car accident in 2010. See Court Docket No. 30, pp. 2-3. However, the evidence before the Court shows that her daughter's car accident was

---

[3]In her response brief, Plaintiff also argues that she needed to take time off to help her grandson, apparently because of the injury to her daughter. See Plaintiff's Response Brief, pp. 3-4.

13



actually in October 2009, with her last surgery having occurred in April 2010. See Defendant's Exhibit (Court Docket No. 98-2, pp. 39-43). Plaintiff's amendment to her Complaint, asserting this claim, was not filed until over two years after the last of these events, and this allegation would not relate back to any of the allegations raised in her original Complaint, as it does not relate to or arise out of "the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading . . . .". English Boiler & Tube, Inc. v. W. C. Rouse & Son, Inc., No. 97-2397, 1999 WL 89125, at * 3 (4th Cir. Feb. 23, 1999); see also Grattan v. Burnett, 710 F.2d 160, 162 (4th Cir. 1983)[Claim can relate back to an earlier complaint only where there is a factual nexus between the amendment and the original complaint, if the defendant had notice of the claim, and will not be prejudiced by the amendment]. Therefore, Plaintiff's FMLA interference claim is time barred under 29 U.S.C. § 2617(c)(1).

Further, even if (liberally construed) Plaintiff's FMLA claim is not time barred,[4] Plaintiff has still failed to present any evidence to show an FMLA violation. Plaintiff testified at her deposition that she did not specifically recall to whom she had made a request for FMLA leave, but she thinks it was to Capps. See Defendant's Exhibit (Court Docket No. 98-2, p. 44). Plaintiff also testified that she did not remember whether she only made a verbal request, but that she did not complete any FMLA paperwork because they did not give her any. Id., pp. 44-45. However, Deana

---

[4] Where an action by a Defendant is "willful", the limitations period is extended to three years. 29 U.S.C. §2617(c)(2). Willfulness occurs where the employer "knew or showed reckless disregard regarding whether its conduct was prohibited by the [FMLA]". Settle v. S.W. Rodgers, Co., No. 98-2312, 1999 WL 486643, at * 3 (4th Cir. July 12, 1999). However, in order to create a genuine issue of fact as to whether a defendant's conduct was "willful", plaintiff must present some evidence of such through depositions, affidavits, answers to interrogatories, or admissions on file. Washington v. Perdue Farms, Inc., No. 07-3552, 2009 WL 386926, at * 7-8 (D.S.C. Feb. 13, 2009). As is discussed hereinabove, infra, Plaintiff has presented no such evidence.



Capps attests that she does not recall Plaintiff ever requesting FMLA leave relating to her daughter's car accident in October 2009 or her daughter's surgeries in October 2009 or April 2010, either verbally or in writing. See Capps Affidavit (Court Docket No. 98-13). The Defendant has also submitted evidence to show that there is no email or documentary record of Plaintiff ever requesting FMLA leave due to her daughter's condition, and notes that Plaintiff has provided no evidence to support her claim that she was denied FMLA leave to care for her daughter other than her own general and conclusory testimony that she "believes" she at some point had made a request to Capps. See Defendant's Exhibit (Court Docket No. 98-2, pp. 44-45; Court Docket No. 98-14).[5]

      Plaintiff cannot simply allege in a conclusory manner that she "thinks" or "believes" that she at some point requested FMLA leave, provide no supporting evidence[6], and expect to survive summary judgment on a claim that she was unlawfully denied FMLA leave, particularly where there is evidence to the contrary. See House, 824 F.Supp. at 485 [Plaintiff's conclusory allegations insufficient to maintain claim]; see also Sylvia Dev. Corp. v. Calvert County, MD., 48 F.3d 810,818 (4th Cir. 1995)[explaining that while the party opposing summary judgment is entitled to the benefit of inferences that can be drawn from the evidence, "[p]ermissible inferences must still be within the range or reasonable probability" and that ["[w]hether an inference is reasonable cannot be decided

---

    [5]With respect to her lack of evidence, Plaintiff states in her response brief that she "did have evidence. But all my evidence disappeared out of my home. I do have a statement from my son stating that he has seen men in our home. They take all and any documents needed. They take them out of my purse, any where they find them. They took a letter from my daughter, note Dr. Hornstein and medical information. When you do not have an attorney things disappear".

    [6]The medical and related FMLA leave documents Plaintiff provided as attachments to her filing of July 13, 2012 (Court Docket No. 30-1) relate to Plaintiff, and do not reference any request for leave to take care of her daughter or any other family member.

15



in a vacuum; it must be considered in light of the competing inferences to the contrary" (internal quotation marks omitted)]; cf. Johnson v. Henry Ford Health System, No. 09-11103, 2010 WL 522793 at * 8 (E.D.Mich. Feb. 9, 2010)[Dismissing claim where Plaintiff could not recall whether she had actually submitted a second FMLA request.].

In any event, Plaintiff has also provided no evidence whatsoever to show that any conduct by the Defendant with respect to a denial of any requests for FMLA leave was "willful" as defined by the applicable case law, which is necessary to even make this a timely claim. Washington, 2009 WL 386926, at * 8 [Requiring that to raise a genuine issue of material fact, the Plaintiff must present some evidence of "willfulness" through depositions, affidavits, answers to interrogatories, or admissions on file]; Settle, 1999 WL 486643, at * 3 [In order to show willfulness, there must be evidence that the employer "knew or showed reckless disregard" for whether its conduct was prohibited by the FMLA]. Therefore, this claim should be dismissed.

## Conclusion

Based on the foregoing, it is recommended that the Defendant's motion for summary judgment be **granted,** and that in this case be dismissed.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

February 10, 2014
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a Defendants' Exhibit novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

17

